**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

VINCENT C.,[1]

      **Plaintiff,**

v.                                                                                  **Civil Action No. 2:25-cv-291**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Vincent C. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's denial of his claim for disability benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff argues that the Commissioner's administrative law judge ("ALJ") improperly evaluated Plaintiff's testimony, resulting in a residual functional capacity ("RFC") that he alleges is not supported by substantial evidence. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report concludes that the ALJ erred in his assessment of the evidence and, despite extensive analysis supporting the decision, I cannot conclude the error was harmless. Therefore this Report recommends that the court GRANT Plaintiff's appeal, (ECF No. 10), and REMAND the final decision of the Commissioner for further proceedings, (ECF No. 13).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.   <u>PROCEDURAL BACKGROUND</u>

In June 2023, Plaintiff first filed for DIB, alleging that he became disabled on March 1, 2023. (R. 185, 207). The Commissioner rejected his application initially, and again on reconsideration. (R. 94-98, 100-03). Plaintiff then requested an administrative hearing, which was held November 6, 2024. (R. 104-05, 28-66). The ALJ again denied Plaintiff's claim for DIB, finding that Plaintiff was not disabled within the meaning of the Act between the alleged disability onset date and the date of the decision, December 26, 2024. (R. 11-27). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-18). The ALJ also found that Plaintiff's RFC for a limited range of light work allowed him to perform work available in the national economy. (R. 18-23). The Appeals Council denied review, (R. 1-3), and Plaintiff timely filed suit in this court.

Plaintiff claims that "[t]he agency committed error of law by denying Appeals Council review of the decision by the Administrative Law Judge," and "[t]he conclusions and findings of fact of the Defendant are not supported by substantial evidence and are contrary to law and regulation." Compl. ¶¶ 4, 8 (ECF No. 1, at 2).

After filing of the Administrative Record the court ordered briefing on the appeal. Am. Order (ECF No. 9). Plaintiff then filed a memorandum in support of his appeal. Pl.'s Opening Br. ("Pl.'s Br.") (ECF No. 10). Plaintiff argues that the case should be remanded because the ALJ failed to adequately explain the reasons he discounted Plaintiff's testimony regarding the limiting effects of his impairments, and incorrectly recorded certain postural limitations he set forth on a Functional Report. Id. at 6-11. As a result, the opinion fails to comply with 20 C.F.R. § 404.1529 and SSR 16-3p. Id.

The Commissioner opposed Plaintiff's motion. Br. Supp. Comm'r's Decision Den. Benefits & Opp'n Pl.'s Br. ("Def.'s Opp'n") (ECF No. 13).[2] The Commissioner argued that the ALJ's incorrect citation to Plaintiff's Function Report had no impact on the ALJ's otherwise correct and thorough assessment of Plaintiff's limitations. Id. at 16. The Commissioner also argued that Plaintiff failed to establish any error in the ALJ's assessment of his subjective report of limitations. Id. at 12-16. Plaintiff replied, primarily arguing the Commissioner engaged in post-hoc justification of the ALJ's decision by citing records and evidence the Commissioner did not expressly rely on. Pl.'s Reply (ECF No. 14, at 2-4). After a review of the record, this Report considers each of these arguments.

## II.    **FACTUAL BACKGROUND**

Plaintiff was born in 1971, and at the time of the alleged onset date, he was 51 years old. (R. 68, 78, 185). Plaintiff met the insured status requirements under the Social Security Act until December 31, 2028, his date last insured ("DLI"). (R. 16). He has not engaged in substantial gainful activity at least since the date of his alleged onset, through the date of his hearing. Id. He completed a bachelor's degree, retired from the Navy, and reported past civilian work as a training specialist and technical writer. (R. 209, 216). He stopped working in 2023 when his employer's contract expired, testifying that the pain he experienced made work difficult. (R. 36-39).

### A.    **Plaintiff's Health Treatment**

Plaintiff's arguments do not require a complete review of his medical history as he primarily disputes only the ALJ's assessment of his physical abilities. See Pl.'s Br. (ECF No. 10,

---

[2] Under the Supplemental Rules for Social Security Actions, effective December 1, 2022, appeals from final decisions of the Social Security Administration are presented for decision by the parties' briefs. Supp. R. Soc. Security Actions Under 42 U.S.C. § 405(g), Rule 5. As both parties have filed their briefs on this matter pursuant to the undersigned's Briefing Order, (ECF No. 9), this matter is ripe for review.

at 7-11).  The records relevant to Plaintiff's physical impairments bearing on this assessment, which were cited by both parties, are summarized below.[3]

Plaintiff's back pain began following a serious motor vehicle accident in 1991, which eventually led to double hip replacement surgery and diagnosis of a syrinx—or fluid filled cavity—in his thoracic spine.  (R. 729-30, 335).  Plaintiff resumed gainful employment following his accident, and continued working, but in April 2021, he sought treatment at Sports Medicine and Orthopedic Center ("SMOC") for low back pain and stiffness in his neck and back.  (R. 333-35).  An MRI revealed mild foraminal stenosis in his cervical spine, as well as the previously diagnosed syrinx in his thoracic spine.  (R. 335).  After treatment with injections failed to completely address his cervical pain, Plaintiff underwent a C4/C5 discectomy with fusion in September 2021.  (R. 310, 313).  One month after surgery, Plaintiff reported no back pain.  His examine that date revealed a normal gait, normal strength and muscle tone, no neuropathy or other neurological deficits.  (R. 311).  In February 2022, Plaintiff reported being pain free and again had normal gait, stance, reflexes, and sensation.  He ambulated without any assistive device.  (R. 306).

In July 2022, Plaintiff reported tingling and numbness on the right side, from his shoulder through his right thumb, index and middle finger.  (R. 482).  He reported trouble making a fist, and was eventually referred for a follow up MRI and a surgical consult.  (R. 476, 482).

In October 2022, Plaintiff returned to SMOC, complaining of a "knot" above his right shoulder and continuing right-sided numbness and tingling.  (R. 301-02).  He received another MRI which showed no issues with his previously placed fusion hardware.  (R. 302-03).  He

---

[3] Plaintiff's Complaint and briefing raised no issue with regard to the ALJ's assessment of his mental limitations, and as a result, this Report omits a detailed discussion of medical records and Plaintiff's testimony relevant to those impairments.

received steroid injections for the new shoulder pain, which left the shoulder tender, but improved. (R. 297-99).

In February 2023, Plaintiff consulted with Sentara Rheumatology Specialists for pain in his hands. (R. 685). The provider he saw that date stated his pain was related to his disc disease and prescribed Lyrica. (R. 686-87). At a SMOC visit in March 2023, Plaintiff again complained of right shoulder pain, weakness, and tingling which improved with medication. (R. 295, 412).

In June 2023, Plaintiff reported to the Sentara Emergency Room for redness and swelling from his right thumb which extended up his arm to his elbow. (R. 674). He reported that he had cut his thumb moving lumber to the dump, and was concerned about infection. (R. 676). He was diagnosed with cellulitis and transferred to Sentara Leigh Hospital for further treatment. (R. 675). He was admitted at Sentara Leigh and spent several inpatient-days on infused antibiotics, eventually diagnosed with tenosynovitis of the right hand and thumb. (R. 654-58, 666). After his discharge, Plaintiff remained on intravenous antibiotics and eventually had additional surgery and physical therapy. (R. 579-80). At a post-surgery appointment on July 26, 2023, Plaintiff reported no pain in his thumb but some discomfort which he described as "like a tight muscle," he had full range of motion in his right thumb with no swelling, warmth, or tenderness. He was discharged to follow up as needed. (R. 903-04).

**B.    Opinion Testimony**

### 1.    State Agency Consultant Joseph Duckwall, M.D.

During Plaintiff's initial application review, state agency physician Joseph Duckwall, M.D., independently reviewed Plaintiff's medical records, finding that he could perform light work with postural limitations. (R. 74-75). Dr. Duckwall found that Plaintiff's impairments limited his handling or fingering with the right hand, but imposed no limits in reaching or feeling—observing

that Plaintiff had full range of motion in his shoulders, but reduced grip strength in his right hand due to his recent bout of cellulitis. Id. Dr. Duckwall found Plaintiff could occasionally lift and carry twenty pounds, frequently lift ten pounds, stand and walk with normal breaks for six hours in an eight-hour day, and sit with normal breaks for six hours in an eight-hour work day. (R. 74).

### 2.    State Agency Consultant Cheryl Arenella, M.D.

State agency physician Cheryl Arenella, M.D., reviewed Plaintiff's medical records on reconsideration and largely agreed with Dr. Duckwall that Plaintiff could perform limited light work, frequently lift and carry ten pounds, and stand or walk six out of eight hours each day. (R. 84-86). Dr. Arenella also agreed with Dr. Duckwall's manipulative limitations due to reduced grip strength in Plaintiff's right hand, which she expected would improve. (R. 85). Dr. Arenella noted Plaintiff's imaging showed status post C4-5 fusion and a "small, nonaggressive" finding, warranting periodic follow-up on MRI of his thoracic spine, but pointed out his normal gait in all exams, 5/5 muscle strength and only a slightly reduced range of motion in his lumbar spine. Id.

### 3.    Agency Consultative Examiner Richard Hoffman, M.D.

Plaintiff also underwent a consultative evaluation by Richard Hoffman, M.D. Dr. Hoffman's exam in August 2023 revealed a painful range of motion in both shoulders and his right hand. (R. 923). He recorded tenderness with synovial thickening in his metacarpophalangeal joints. Id. Dr. Hoffman noted reduced grip and pinch strength in Plaintiff's right hand and opined that Plaintiff would have severe limitations in both fine and gross manipulations with his right hand. Id. Plaintiff had a painful range of motion and tenderness in his spine, but no radiculopathy, a negative straight leg raise test, and normal gait. (R. 924). Dr. Hoffman found Plaintiff would be limited to standing three hours in an eight-hour workday and would have difficulty walking,

bending, stooping, crouching, crawling as well as severe difficulty with manipulative activities. (R. 925).

### 4.    Adult Function Report

On August 15, 2023, in connection with his application, Plaintiff completed an Adult Function Report. (R. 235-42). Plaintiff wrote that his disc disease causes severe pain in his neck and shoulders and he has arthritis in both hands. (R. 235). Plaintiff noted that he "move[d] slowly" to "complete family chores" and care for his dogs. (R. 236). He indicated that he had few problems with personal care, mostly related to things being "hard to grip." (R. 236). He wrote that he prepares simple meals daily and performs household chores, like cleaning and laundry, without assistance but does not do yard work or other chores due to limitations from his spinal cord injuries and arthritis. (R. 237). He drives, goes outside daily, goes out alone, and shops in-stores. (R. 238). He reported that his hobbies included reading, watching television, movies, and history, but they have been significantly reduced due to pain. (R. 239). His social activities included visiting with his grandchildren, on the phone or over text, and volunteering at the Botanical Gardens. Id.

With regard to his abilities, Plaintiff checked boxes indicating that his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use his hands. (R. 240). Asked to explain these limitations, Plaintiff wrote, "I have DDD [degenerative disc disease], DJD [degenerative joint disease], [and] arthritis." Id. He denied using an assistive device, such as a cane or walker—but did report using a brace as prescribed. (R. 241).

### C.    Testimony Before the ALJ

The ALJ questioned Plaintiff by telephone at a hearing on November 6, 2024. (R. 30-55). The ALJ also heard testimony from the vocational expert ("VE"), Thomas McCoy. (R. 55-65).

### 1.    Plaintiff's Testimony

On examination by the ALJ, Plaintiff described his back and neck pain, which included his cervical spine surgery in 2021, and symptoms from his older spinal cord injuries, which he stated were excruciatingly painful.  (R. 40).  He described receiving some physical therapy through the VA, but no injections, which he attributed to difficulties arranging the treatment through the VA.  (R. 41).  Plaintiff testified that no doctor had prescribed a cane or assistive device, but he retained one from his hip surgery in 2011 and 2012.  (R. 43).  Plaintiff also described his history of right thumb infection from the summer of 2023, which required IV antibiotics and hospitalization.  (R. 43-44).  He described his infection as "resolved," but stated he still had a limited range of motion. Id.  He described difficulty gripping with both hands which he attributed to moderate arthritis.  (R. 44).  He also stated that he experienced swelling and pain in his hands, which he treated with a TENS unit and ice pack, but has not tried injections or other medication for his hands.  (R. 45).

With regard to his limitations, Plaintiff described being able to use a computer, but only for about twenty minutes before "my neck and my hands all start flaring up."  (R. 45-46).  He said he has difficulty getting into a tub or shower, and stated that it was "getting hard to button" his clothes.  (R. 49).  He described preparing meals but said that he had to sit down after ten minutes and was unable to make a complete meal.  Id.  He denied doing any household chores, such as dishes, laundry, vacuuming, or sweeping.  (R. 50).  With regard to shopping, he stated, "I have someone push the shopping cart, but I can go in."  Id.

### 2.    Testimony from the VE

The ALJ also received evidence from VE Thomas McCoy.  (R. 55-65).  The VE first identified Plaintiff's past relevant work, which he characterized as a composite of technical publications worker and quality control technician—both of which Plaintiff performed at the

sedentary level. (R. 59-60). Both jobs were skilled, with SVP level of 8, and Plaintiff performed them long enough to have acquired the necessary transferable skills. Id.

The ALJ's hypothetical for the VE posited a person who is capable of light work with the following limitations:

> They would be limited to light work. They would be limited to frequent handling and fingering bilaterally. They would be limited to occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling. The individual would never work at unprotected heights, would work with moving mechanical parts more than occasionally, would be limited to occasional operation of a motor vehicle, would be limited to occasional exposure to vibration.

(R. 60-61).

The ALJ then asked if such a hypothetical individual could perform Plaintiff's past relevant work, and the VE answered, yes. (R. 61). But when the ALJ added limitations to only occasional handling or fingering, or simple routine, repetitive work with no quotas or assembly line pace, both restrictions eliminated Plaintiff's past relevant work. Id. Finally, returning to the original hypothetical, but adding the limitation to simple repetitive work—the ALJ asked if there were jobs the person could perform. The VE provided counter clerk (DOT 249.366-010), cleaner/housekeeping (DOT 323.687-014), and marker (DOT 209.587-034. (R. 61-62). When that same hypothetical is changed so that the handling and fingering are reduced from frequent to occasional, the VE testified that the market and housekeeper job would no longer be applicable. (R. 62). The VE also testified that for simple work, employers would tolerate no more than ten percent time off task or one day absence per month. (R. 62-63).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison

Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence,

but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640,

642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d

585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable

minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

[Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The

Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and

must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th

Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's

determination is not supported by substantial evidence on the record, or the ALJ made an error of

law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    ANALYSIS

Plaintiff primarily argues that the ALJ failed to explain his decision to only partially credit

his testimony, and as a result, failed to comply with the two-step process set out in SSR 16-3p and

prevailing law. Pl.'s Br. (ECF No. 10, at 6-11). The error is compounded, according to Plaintiff,

by the ALJ incorrectly reciting Plaintiff's self-report from his 2023 Function Report regarding his

ability to complete postural movements which Plaintiff describes as "an egregious misstatement

of Plaintiff's subjective symptoms," that alone warrants remand. Id. at 9. Plaintiff alleges that the

ALJ's error and his analysis of the other evidence of record fail to justify his decision to discredit his testimony and require remand. Id. at 10-12. The Commissioner contends that the ALJ properly referenced and applied the two-step process in SSR 16-3p and the factors in 20 C.F.R. § 404.1529, and substantial evidence supports the ALJ's decision. Def.'s Opp'n (ECF No. 13, at 12-17). Although the Commissioner acknowledges ALJ error in the opinion's description of Plaintiff's Function Report, he argues the error did not affect how the ALJ analyzed Plaintiff's complaints, and the medical evidence of his physical limitations supports the limited, light exertion RFC the ALJ imposed. Id. at 16-17. For the reasons explained below, this Report finds error in the ALJ's decision, and—despite extensive analysis contained in the ALJ's opinion—I am unable to find the error was harmless. Accordingly, remand is warranted.

## A.    Framework for SSA Disability Evaluation.

A person may file for and receive disability insurance benefits under the Social Security Act if he or he meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a).

An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or his prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1.    Is the individual involved in substantial gainful activity?

11

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or his physical or mental ability to do basic work activities?

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or his from performing any relevant past work?

5. Does the individual's impairment or combination of impairments prevent him or his from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.    The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2023, the alleged onset date, through the date of the decision, December 26, 2024. (R. 16).    At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: degenerative disc disease, status post right hand cellulitis infection, ulnar neuropathy, depression, and PTSD.  (R. 16).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 17-18).

The ALJ then developed a finding regarding Plaintiff's RFC, and determined that Plaintiff, through the date of decision, could perform light work with the following additional limitations:

> [H]e can handle items frequently with the left hand, and the claimant can handle items frequently with the right hand.  He has fingering limitations frequently with the left hand, and the claimant has fingering limitations frequently with the right hand.  The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally.    The claimant can never work at unprotected heights, can work moving mechanical parts occasionally, and operating a motor vehicle occasionally.  He can work in vibration occasionally. The claimant is able to perform simple, routine and repetitive tasks.  The claimant can have no hourly quotas or assembly line work.

(R. 18).  At step four, the ALJ concluded that Plaintiff could not perform past relevant work, (R. 22), but at step five, could perform work available in substantial numbers in the national economy as a counter clerk, cleaner, or marker.  (R. 22-23).

**C.    The ALJ Erred in his Analysis and Evaluation of Plaintiff's Testimony and Resulting RFC Finding.**

In this case, the ALJ's most critical findings related to Plaintiff's ability to meet the physical demands of light work, as well as the RFC's limitation to "frequent" as opposed to "occasional" fingering and handling.  (R. 18-20).  A limitation to sedentary exertional level

13

employment, or only occasional fingering and handling would have precluded all of the jobs the VE identified which the ALJ relied on in his Step 5 finding. (R. 60-62).

Plaintiff argues that the ALJ erred by mischaracterizing his statements regarding the limitations imposed by his impairments and as a result failed to comply with SSR 16-3p and prevailing law. Pl.'s Br. (ECF No. 10, at 1, 6-11). The Commissioner argues that the ALJ properly applied the two-step process and relied on the regulatory factors in 20 C.F.R. § 404.1529 to determine the nature, intensity, frequency, and severity of Plaintiff's symptoms and their impact on his ability to work. Def.'s Opp'n (ECF No. 13, at 12-17). After reviewing the evidence cited by both parties and the ALJ, I agree with Plaintiff that the analysis supporting the ALJ's RFC finding fails to provide the detail necessary to sustain the finding even under deferential substantial evidence review.

In arriving at Plaintiff's RFC, the ALJ's analysis began with an incorrect citation to Plaintiff's self-reported postural limitations. (R. 19). He wrote, "The claimant reported that he could lift, squat, bend, stand, reach, walk, sit, kneel, or climb stairs." Id. This finding is attributed to the Function Report and Plaintiff's hearing testimony. But neither citation supports this statement. In the Function Report, Plaintiff listed those postural limits as affected by his impairments, (R. 240), and in his hearing testimony Plaintiff reiterated significant limitations—though he did not address these postural limits specifically, (R. 49-50). Moreover, nowhere in the opinion does the ALJ make clear that Plaintiff's actual Functional Report describes postural limits—the opposite of what his opinion recited. As a result, it is not clear whether the medical evidence cited by the ALJ in arriving at his RFC is intended to rebut Plaintiff's description of his symptoms, or merely additional medical evidence of his disability.

14

Not every incorrect description of a claimant's testimony produces harmful error. In fact, this court recently found harmless error when the ALJ misstated Plaintiff's testimony, but the opinion as a whole demonstrated that the ALJ correctly understood Plaintiff's description of his limitations. Carlton S. v. Bisignano, No. 2:24-cv-324, 2025 WL 2600014, at *10 (E.D. Va. July 7, 2025). But in this case, the ALJ's opinion as a whole does not demonstrate that his analysis was directed to Plaintiff's postural limitations because the only citation about his postural limits is to Plaintiff's testimony, which the ALJ incorrectly recorded.

With respect to Plaintiff's ability to frequently finger and manipulate, the ALJ's analysis of his subjective testimony is similarly lacking. Plaintiff testified extensively regarding problems with his hands in both his Function Report and hearing testimony. He described arthritis in his hands and an inability to grip, which interfered with his personal care. (R. 235-36). He testified at the hearing to a limited range of motion in his thumb, difficulty gripping, swelling and pain in his hands. (R. 45). He could only use his laptop for twenty minutes before hand pain caused him to stop, and he testified that it was becoming difficult to button his clothing. (R. 49). The ALJ—although citing the same record evidence—summarized Plaintiff's testimony in one sentence, "The [C]laimant had difficulty using his hands." (R. 19). Even accepting that the ALJ's brief summary of Plaintiff's testimony correctly identified his statements concerning the intensity, persistence, and limiting effects of his symptoms, the analysis his opinion provided fails to demonstrate the evidentiary basis necessary to support the ALJ's conclusion that Plaintiff overstated his "difficulty," and would still be able to frequently[4] finger and handle with both hands.

---

[4] "Frequently," under SSA guidance, means the worker would be expected to engage in the activity up to two-thirds of an eight-hour day, or 5.5 hours per day. Soc. Sec. Admin., Program Operations Manual System (POMS) DI25001.1(A)(33) (2026), https://secure.ssa.gov/poms.nsf/inx/0425001001 [https://perma.cc/YTE7-5GHS].

15

In arriving at this RFC limit on fingering and handling, the ALJ first correctly described Plaintiff's medical history of cervical injections, past fusion surgery, right shoulder numbness and pain, and his recent hand-infection, treatment, and subsequent diagnosis of flexor tenosynovitis. (R. 19). He then noted that Plaintiff's two hand surgeries and physical therapy for his hand which resulted in some improvement, and concluded his analysis writing:

> In October 2024, the [C]laimant's examination showed that he had ongoing hand pain. However, his pain was managed with medication. The [C]laimant was using a wrist brace. He was completing household chores and babysitting his grandson.

(R. 19) (citing R. 1290-91). Based on this analysis, the ALJ found Plaintiff could perform a reduced range of light work with manipulative and fingering limited to "frequently," and postural limits to address shoulder, neck, and back pain. Id.

The Fourth Circuit has explained that, when crafting an RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8, 1996 WL 362207 (July 2, 1996)). In addition, the ALJ must provide evidence supporting his determination and "build and accurate and logical bridge" to his or her conclusion. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). Without this explanation, the court must "guess about how the ALJ arrived at his conclusions" and cannot meaningfully review them. Mascio, 780 F.3d at 637. Applying that standard to the ALJ's analysis here, I am unable to conclude that the evidence cited by the ALJ accurately and logically leads to his conclusion.

The Commissioner argues that any error in summarizing Plaintiff's self-report of his limitations is harmless because of the extensive objective medical evidence the ALJ cited to support his finding that Plaintiff was limited to the range of light work and manipulative restrictions specified in the RFC. Def.'s Opp'n (ECF No. 13, at 13). Indeed, the ALJ does cite

details from Plaintiff's medical treatment that support some of the Commissioner's conclusions. Plaintiff sometimes had unremarkable physical exams, including intact strength and range of motion with no neurological deficits. (R. 19) (citing R. 296-318). His conditions generally responded well to treatment with medications and improved with surgery. (R. 19) (citing R. 579-599, 903-07). Despite this analysis, I cannot find that the ALJ built the required "logical bridge" between the cited medical evidence and Plaintiff's limitations. This is partly due to the fact that his opinion failed to accurately record, or demonstrate a sufficient understanding of exactly what Plaintiff described in his testimony. In addition, the medical records the ALJ cited to and relied on illustrate normal neurological findings from 2021 and 2022, more than a year before Plaintiff's alleged onset date. Moreover, with respect to the critical limitation in his RFC related to handling and fingering, the evidence the ALJ cited is minimally probative and insufficient to support the ALJ's conclusion.

At bottom, to partially discredit Plaintiff's testimony regarding his manipulative limitations, the ALJ relied primarily on the fact that "[h]e was completing household chores and babysitting his grandson." (R. 19) (citing R. 1290-91). But this citation—though accurate—cannot bear the entire weight the Commissioner would ascribe to it. For one, the statement was made in the context of treatment for his left-handed tenosynovitis, a relatively new complaint. And Plaintiff reported his activity to explain why it was difficult for him to rest his left hand. (R. 1290). The brief mention of household chores in the medical record also contradicts Plaintiff's hearing testimony, (R. 50), and the detailed qualifications on his ability to complete household tasks described in his Function Report, (R. 235-37). The ALJ did not acknowledge the extent of Plaintiff's ability to complete chores, or explain why his single mention of babysitting grandchildren to a healthcare provider undermined extensive medical and testimonial evidence of

his hand and right-sided joint pain. See Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 272 (4th Cir. 2017).

The ALJ also relied on opinion evidence from the Consultative Examiner Dr. Hoffman, but his assessment of the opinion also falls short of the necessary detail. See (R. 20-21). Dr. Hoffman, who examined Plaintiff at the request of the agency, concluded that Plaintiff had reduced grip and pinch strength in his right hand, and a "severe decreased ability to perform both fine and gross manipulations using the right hand." (R. 923). He also observed limited and painful range of motion in his shoulders and cervical and thoracolumbar spine. (R. 923-24). As a result, Dr. Hoffman opined Plaintiff could only lift between five-to-ten pounds frequently and between ten-to-twenty pounds occasionally. (R. 925). He also found "severe" postural limitations. Id. As with Plaintiff's testimony, the ALJ discounted Dr. Hoffman's opinions primarily based on the lone medical record reference to babysitting and household chores. (R. 21).

Under the applicable regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain "the most important factors" of "supportability and consistency," id. § 404.1520c(b)(2). Supportability evaluates whether a medical source supports his or her opinion with "objective medical evidence and supporting explanations," id. § 404.1520c(c)(1), while consistency evaluates whether "evidence from other medical sources and nonmedical sources" also support the source's opinion, id. § 404.1520c(c)(2).

18

Here, when explaining his assessment of Dr. Hoffman's opinion in relation to his RFC determination, the ALJ first stated that he "considered the medical opinion(s) and prior administrative medical finding(s)." (R. 20). Then, assessing Dr. Hoffman's opinion specifically, the ALJ wrote:

> This opinion is somewhat persuasive. As to the supportability, Dr. Hoffman's opinion is not supported by his opinion [sic]. The claimant had reduced right hand strength in his examination. However, the claimant was intact neurologically. Thus, severe manipulative limitations are not supported by the record. In addition, the claimant had a normal gait and intact neurological findings. Thus, walking and standing limitations are not supported by the examination. This examination was also conducted shortly after the claimant's right hand infection. As to the consistency, the claimant's examinations showed that his impairments were managed with treatment. The claimant had a normal gait, intact strength, and intact neurological findings despite his physical impairments. The claimant had intact hand strength within twelve months of the claimant's hand infection. The claimant could complete household chores and babysit his grandson.

(R. 21) (citation omitted).

First, it is not clear what is meant by the conclusion that Dr. Hoffman's "opinion is not supported by his opinion." Assuming this is meant to be a criticism of the opinion's relationship to Dr. Hoffman's examination—it is not correct. Dr. Hoffman's exam demonstrated reduced grip strength, reduced pinch strength, and severe manipulative restrictions. It is true, as the ALJ also observed, that Dr. Hoffman saw the Plaintiff shortly after his infection in August 2023. But Plaintiff's manipulative limitations date to 2022 when he reported numbness, tingling, and difficulty gripping, which his providers attributed to his cervical fusion, and related disc disease. R. 476, 482). And his post-surgical follow-up for his hand surgery was one month earlier, and though Plaintiff reported being pain free—he still had muscle tightness. (R. 903-04). Moreover, the medical record demonstrates additional limitations arising from his left handed tenosynovitis and continued loss of function, which he attributed to his right hand infection and degenerative disc and joint disease. (R. 654-58, 666). It appears the ALJ discounted Dr. Hoffman's severe

limitations primarily based on his conclusion—repeated three times—that Plaintiff was "intact neurologically," and the relative proximity to his right hand infection. (R. 20-21). But neither of these medical references address other contributors to his manipulative and postural limitations well documented in the record.

An ALJ is not "obliged to accept, without more, [a claimant's] subjective assertions of disabling pain and his subjective assessment of the degree of that pain." Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996); Tonya D. v. Kijakazi, No. 7:20-cv-777, 2022 WL 1126623, at *7-8 (W.D. Va. Feb. 7, 2022). Nor is the ALJ "required to make specific findings related to each of [the claimant's] subjective assertions." Tonya D., 2022 WL 1126623, at *7 (citing Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020)). But merely listing a claimant's report of activity—which neither establish an ability to engage in "substantial physical activity," nor "contradict [a] claim of disabling pain" fails to build "the accurate and logical bridge" from evidence to conclusion required by the Fourth Circuit precedent. Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 269-70 (4th Cir. 2017) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)); see also, Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016).

In determining whether an error is harmless, courts must consider "an estimation of the likelihood that the result would have been different . . . ." Shineski, 556 U.S. at 411. For that error to be harmful, Plaintiff must demonstrate that it was material to the findings actually made by the ALJ in reaching his RFC determination. See, e.g., Grindley v. Kijakazi, 9 F.4th 622, 629 (8th Cir. 2021) ("Even if we had concluded that the ALJ made some factual misstatements in his decision, we hold alternatively that these errors would be harmless because [claimant] still fails to meet the criteria to be considered disabled."); cf. Ross v. Berryhill, No. 3:18-cv-42, 2019 WL 289101, at *13 (E.D. Va. Jan. 3, 2019) (finding harmless error when ALJ failed to account for Plaintiff's

20

capacity to lift only ten pounds because ALJ posed hypothetical limited to sedentary work, which requires lifting a maximum of ten pounds).

In this case, Plaintiff has established harmful error in the ALJ's assessment of his testimony. As the record makes clear, Plaintiff reported significant limitations on his ability to handle, finger, and engage in fine manipulation, and testified that these limitations persisted after his acute thumb infection had resolved. He also described postural and exertional limitations related to his well-documented back, neck, and joint disorder. (R. 49-50). His attorney pressed these limitations as work preclusive. Indeed, the ALJ offered two versions of the hypothetical—including one which limited the subject to only "occasional" handling and fingering, but declined to adopt those limits in fixing Plaintiff's RFC. (R. 60-61).

In deciding to partially discredit Plaintiff's testimony the ALJ failed to establish the necessary logical bridge between the evidence cited and his ultimate conclusion regarding Plaintiff's limitations. This legal error is best addressed by remand for additional proceedings.

## V.    **RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the court GRANT Plaintiff's Brief in Support of Remand, (ECF No. 10), DENY Defendant's Brief in Support of the Commissioner's Decision Denying Benefits and in Opposition to Plaintiff's Brief, (ECF No. 13), and REMAND the case for further proceedings.

## VI.    **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C.

21

§ 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia

March 25, 2026

22